UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

BRYAN WOLVERTON,

      Plaintiff,

  v.

THE GOODYEAR TIRE AND RUBBER COMPANY,

      Defendant.

Civil No. 13-2782 (NLH/AMD)

OPINION

---

**APPEARANCES**:

ROBERT P. MERENICH
GEMMEL, TODD & MERENICH, P.A.
767 SHORE ROAD
P.O. BOX 296
LINWOOD, NJ 08221
    On behalf of plaintiff

WILLIAM P. MCLANE
LITTLER MENDELSON, PC
ONE NEWARK CENTER
EIGHTH FLOOR
NEWARK, NJ 07102
    On behalf of defendant

**HILLMAN, District Judge**

    Presently before the Court is the motion of defendant for summary judgment on plaintiff's claims that defendant violated the New Jersey Conscientious Employee Protection Act ("NJ CEPA"), N.J.S.A. 34:19-1, et seq.  For the reasons expressed below, defendant's motion will be granted.

## BACKGROUND

On January 2, 2012, defendant, The Goodyear Tire and Rubber Company, hired plaintiff, Bryan Wolverton, as an auto technician at its Pleasantville, New Jersey store. Plaintiff claims that from the time he began working at Goodyear some of his coworkers smoked cigarettes inside the building, to his displeasure and in violation of Goodyear policy and New Jersey law. Plaintiff contends that when he complained about the indoor smoking, his supervisors and Goodyear human resource personnel did not properly investigate his concerns, and he had to resort to contacting the fire department, Goodyear's internal Integrity Hotline, and the Atlantic County Division of Public Health. Based on his actions related to his concerns about indoor smoking, plaintiff claims that his coworkers retaliated against him by treating him in a hostile and harassing manner, requiring him to quit his job on March 28, 2012.

Plaintiff filed a one-count complaint against Goodyear claiming that Goodyear violated the NJ CEPA. Plaintiff claims that he was constructively discharged due to harassment resulting from his complaints that employees were smoking indoors. Goodyear has moved for summary judgment in its favor, arguing that Goodyear was responsive to plaintiff's concerns, conducted a reasonable investigation into his complaints, and did everything possible to ensure that its employees abided by

2

the Goodyear smoking policy and New Jersey law, and otherwise respected plaintiff's concerns about the indoor smoking and his claims about co-worker harassment.  Plaintiff has opposed Goodyear's motion.

## DISCUSSION

**A.   Subject matter jurisdiction**

Defendant removed this action from New Jersey state court to this Court pursuant to 28 U.S.C. § 1441.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.  The citizenship of the parties is as follows:  plaintiff is a citizen of New Jersey, and defendant is an Ohio corporation with its principal place of business in Akron, Ohio and therefore a citizen of Ohio.

**B.   Standard for Summary Judgment**

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Celotex Corp. v.

3

Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor."  Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  Id.  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  Anderson, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague

4

statements.  Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

### C. Analysis

Plaintiff claims that Goodyear violated New Jersey's Conscientious Employee Protection Act when he was constructively discharged as a result of his complaints about indoor smoking violations.  The New Jersey Legislature enacted CEPA to "protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employers from engaging in such conduct."  Abbamont v. Piscataway Township Bd. of Educ., 650 A.2d 958, 971 (N.J. 1994).  In furtherance of that goal, the statute provides, in relevant part:  "An employer shall not take any retaliatory action against an employee because the employee does any of the following: . . . c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes: (1) is in violation of a law, or a rule or regulation promulgated pursuant to law . . .; (2) is fraudulent or criminal; or (3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment."  N.J.S.A. 34:19-3(c).

A plaintiff who brings a cause of action pursuant to N.J.S.A. 34:19-3(c) must demonstrate that: (1) he or she reasonably believed that his or her employer's conduct was

5

violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a "whistle-blowing" activity described in N.J.S.A. 34:19-3(c); (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action. Kolb v. Burns, 727 A.2d 525, 530 (N.J. Super. Ct. App. Div. 1999) (citation omitted).

The viability of plaintiff's NJ CEPA claim hinges on whether plaintiff suffered an adverse employment action by Goodyear as a result of his whistle-blowing activity. The Act defines "retaliatory action" to mean "the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment." N.J.S.A. 34:19-2(e). Goodyear argues that because plaintiff voluntarily quit his job, he was not subjected to a retaliatory action. Plaintiff does not dispute that he quit his job, but he contends that Goodyear's lack of adequate investigation into his complaints about indoor smoking and his coworkers' harassment of him because of his complaints caused his working conditions to be so offensive, he could no longer tolerate his employment and he had no other alternative but to resign.

"[C]onstructive discharge requires not merely severe or

6

pervasive conduct, but conduct that is so intolerable that a reasonable person would be forced to resign rather than continue to endure it." Dunkley v. S. Coraluzzo Petroleum Transporters, 98 A.3d 1202, 1212 (N.J. Super. Ct. App. Div. 2014) (quoting Shepherd v. Hunterdon Developmental Ctr., 803 A.2d 611 (N.J. 2002)) (other citation omitted).  The level of proof requires a showing of "egregious circumstances," which is even greater "than that required to establish a hostile work environment." Id.  The proofs must show "outrageous, coercive and unconscionable" acts.  Id.

　　The evidence in the record, including plaintiff's own testimony, does not support the "egregious circumstances" necessary to prove his claim that he was constructively discharged.  A timeline of events is instructive:

1. On January 2, 2012, plaintiff began working at the Pleasantville, New Jersey Goodyear store.  Goodyear states that plaintiff was a top-notch employee with obvious potential for advancement with the company.

2. On January 30, 2012, plaintiff complained in person to the service manager and store manager about employees smoking inside the facility.  Plaintiff claims that the managers said they would address the issue, but even after his continuing complaints, the managers said that they did not see the indoor smoking.

7

3. On February 29, 2012, plaintiff had a confrontation with mechanic Ed Gobbo about smoking indoors. Plaintiff claims that Gobbo kept his cigarettes in his toolbox, and during their interaction on that day, Gobbo blew smoke in plaintiff's face. Plaintiff reported this to the store manager. The store manager discussed the situation with Gobbo and the other employees, who all denied that Gobbo blew smoke in plaintiff's face. The manager reviewed and reissued Goodyear's tobacco use policy with all the technicians and mechanics, and required that they all re-sign the policy to evidence their understanding of it. The store manager also reminded everyone about Goodyear's policies regarding appropriate workplace behavior.

4. Plaintiff claims that during this time, Gobbo threatened his life if Gobbo lost his job as a result of plaintiff's complaints. Gobbo states that he told plaintiff that he was "digging his own grave," or "digging his own hole," through his own actions.

5. Plaintiff claims that during this time, his coworkers did not work collaboratively with him to fully service and inspect customers' cars, and that on one occasion his coworkers would not lower a chain to allow him back into the facility after retrieving a customer's car.

6. On March 14, 2012, plaintiff had an altercation with

mechanic Scott Super, who had been employed at Goodyear for four years. Plaintiff was helping Super clean up some fluid Super spilled, when the situation devolved into plaintiff asking Super to leave him alone, and then yelling "f--- you." Plaintiff claims he responded like this because Super, on at least ten prior occasions, had threatened to kill him if Super lost his job because of plaintiff's smoking complaints. Plaintiff reported this incident to the shop manager.

7. On March 14, 2012, plaintiff called Goodyear's internal Integrity Hotline and raised complaints about his coworkers smoking indoors, and their harassment of him because of his complaints. Plaintiff also sent an email with his concerns to district manager, Karole Grois.

8. On March 15, 2012, as a result of his call to the hotline, human resources manager Elizabeth McElroy investigated plaintiff's complaints. McElroy spoke with the two managers and Gobbo and Super. She also noted that Grois, along with the general manager, had stopped by the store unannounced the day before and did not see any indoor smoking or cigarette butts on the floor. She determined that plaintiff's claims were unsubstantiated.

9. On March 15, 2012, plaintiff called the Atlantic County Division on Public Health to complain about smoking

9

inside the Goodyear facility.

10. On March 19, 2012, Jill Miles from the Division conducted an unscheduled on-site investigation. She observed an employee smoking outside the building in a designated area, but she did not observe any smoking inside the building. Miles found several old, deteriorated cigarette butts in the basement. Ms. Miles states that the store manager did not adamantly deny that there was no smoking in the building, but she also states that she did not ask him that question directly.

11. On March 28, 2012, the Division issued Goodyear a notice that at some point Goodyear had violated the New Jersey Smoke Free Air Act, and reminded Goodyear that it should follow the law prohibiting indoor smoking. No other action was required of Goodyear.

12. On March 28, 2012, plaintiff quit his job, claiming it was because it was clear to him that management would not stop his fellow employees from smoking or harassing him, because he was suffering from panic attacks and stress, and because any opportunities for advancement had been lost.

13. On March 29, 2012, plaintiff called the Integrity Hotline again. He stated that he was feeling harassed by his coworkers because they were ignoring him and refusing

10

    to work with him to get work done.  He also stated that the service manager told him that plaintiff calling the hotline was the worst decision he made.  He also stated that he did not feel that this prior complaint was resolved.

  14. On May 14, 2012, plaintiff's unemployment compensation benefits application was approved.  Goodyear had contested plaintiff's application.  After a hearing, a deputy found:  "You left your job voluntarily on 3/28/12 because you were dissatisfied with your working conditions.  Evidence indicates that you attempted to resolve the problems with your employer prior to leaving.  Evidence indicates that your reason for leaving constitutes good cause attributable to the work.  You are eligible for benefits."  (Pl. Ex. L.)

 Plaintiff contends that the investigation into his complaints was shoddy and ineffective, his concerns about harassment, including death threats, were never addressed, and that the finding by the unemployment benefits deputy that there was good cause for him to leave his employment all support his contention that he suffered an adverse employment action by being constructively discharged as a result of his complaints of illegal indoor smoking.  None of these arguments is availing.

11

First, even though plaintiff was dissatisfied with Goodyear's investigation into his complaints about indoor smoking and the alleged harassment by his smoker coworkers, plaintiff does not articulate what Goodyear should have done instead. Goodyear provides a detailed account of its immediate responses to plaintiffs' numerous complaints, starting with his late February 2012 altercation with Gobbo, which resulted in a reinforcement of the Goodyear smoking policy. Although his concerns about indoor smoking were addressed at the store level, two weeks later plaintiff's altercation with Super led to a more formal investigation by corporate human resources as a result of plaintiff's call to the Integrity Hotline.

Importantly, that investigation occurred immediately, every person involved was interviewed, and despite finding plaintiff's claims to be unsubstantiated, the Goodyear corporate policies were again reinforced with all employees. See Griffin v. Harrisburg Prop. Servs., Inc., 421 F. App'x 204, 209 (3d Cir. 2011) (finding that the employer took adequate remedial action where it commenced an investigation on the next business day after the plaintiff's complaints, the complaints were investigated and resulted in discipline and a final warning to the harasser); Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 110 (3d Cir. 2009) (affirming the district court's judgment denying the plaintiff's hostile environment claim where

12

the employer launched an investigation on the day the plaintiff filed her complaint, interviewed various individuals the plaintiff mentioned in her complaint and disciplined every employee it found to have violated company policies); Andreoli v. Gates, 482 F.3d 641, 644 (3d Cir. 2007) (citing Knabe v. Boury Corp., 114 F.3d 407 (3d Cir. 1997)) (explaining in the context of sexual harassment, finding an employer's actions to be adequate, as a matter of law, where management undertook an investigation of the employee's complaint within a day after being notified of the harassment, spoke to the alleged harasser about the allegations and the company's sexual harassment policy, and warned the harasser that the company does not tolerate any sexual comments or actions).

It must also be noted that from late February 2012 until plaintiff quit on March 28, 2012, plaintiff does not provide any evidence of indoor smoking, which was corroborated by unannounced visits by a district manager, as well as the Atlantic County Division on Public Health. It is unclear what plaintiff wanted Goodyear management to have done differently when there was no evidence of indoor smoking, the prevention of which was the purpose of plaintiff's complaints and his impetus for "whistleblowing."

Second, the nature of plaintiff's alleged harassment does not support his contention that he was constructively

13

discharged.  Plaintiff claims that he received numerous death threats, but that claim is based only on his allegations, and it is not supported by specific facts and affirmative evidence that contradict the evidence provided by Goodyear.  Plaintiff's other allegations of harassment are his coworkers' alleged overt acts, like once locking a chain so he could not enter the building with a customer's car, and passive acts, like not assisting him with car inspections and ignoring him altogether.  These allegations do not amount to the level of harassment sufficient to substantiate a constructive discharge claim.

Indeed, even a finding that these allegations were considered "severe" or "pervasive" is insufficient.  See Dunkley, 98 A.3d at 1212 (explaining that constructive discharge requires not merely severe or pervasive conduct, and that employee discourtesy and rudeness should not be confused with employee harassment; an "unhappy" workplace does not equate to a hostile work environment); see also id. (citing Cokus v. Bristol Myers Squibb Co., 362 N.J. Super. 366, 382-83, 827 A.2d 1173 (Law Div. 2002) ("The fact that [the plaintiff's] co-workers and superiors chose to limit their contact with [him] to business only and otherwise ignored [him], stared/glared at [him] when they walked by [him], and, even as plaintiff believed—talked about [him] behind closed doors," fails to create a hostile work environment.), aff'd 362 N.J. Super. 245, 246-47, 827 A.2d 1098

14

(App. Div.), certif. denied, 178 N.J. 32, 834 A.2d 405 (2003); Battaglia v. United Parcel Serv., Inc., 214 N.J. 518, 549, 70 A.3d 602 (2013) (explaining that in the context of the NJLAD, under which the hostile environment claims are usually raised, the NJLAD does not create a "sort of civility code for the workplace).

Third, the proceedings for plaintiff's unemployment benefits do not assist his claim. As pointed out by Goodyear, not only does the benefits determination confirm that plaintiff admits that he voluntarily left his job at Goodyear, the proceedings have no import in a NJ CEPA violation case. See Olivieri v. Y.M.F. Carpet, Inc., 897 A.2d 1003, 1013 (N.J. 2006) (in the context of a NJ CEPA violation claim, the New Jersey Supreme Court finding: "The salutary purposes of our unemployment compensation scheme . . . must inform the uses to which unemployment compensation determinations may be applied. When juxtaposed against the type and manner of decisions to which we apply collateral estoppel effect, the very strengths of the unemployment compensation scheme in respect of the award of benefits become weaknesses: its speed of decision-making inhibits the deliberative process; its underlying purpose, the almost presumptive payment of unemployment compensation benefits, is at odds with a process that values a level playing field; and the disparity between what is at stake between an

15

employer and an employee skews the results.").

## CONCLUSION

The Court accepts that plaintiff was concerned, rightly so, about his coworkers smoking inside his workplace. The Court also accepts that his coworkers who were smokers may not have appreciated plaintiff making an issue of their smoking when he came in as a new employee and voiced their displeasure in inappropriate and offensive ways. The record shows, however, that when plaintiff voiced his complaints about indoor smoking and the harassment he felt he received as a result, management quickly took reasonable action to ensure that the Goodyear employees knew the rules against smoking inside the facility, and to investigate plaintiff's concerns about harassment. The record also shows that within weeks of plaintiff's employment and after his complaints, the indoor smoking ceased. Even though the circumstances surrounding plaintiff's whistleblowing activity caused him to believe that his three-month job at Goodyear was a "dead end," plaintiff has not provided sufficient evidence to show that the circumstances caused or tolerated by Goodyear were so "egregious, outrageous, coercive and unconscionable" that they amounted to an adverse employment action by Goodyear.

Consequently, because plaintiff has not provided sufficient

16

proof to establish a genuine issue for trial on his NJ CEPA violation claim, Goodyear's motion for summary judgment must be granted.  An appropriate Order will be entered.


Date:  February 25, 2015          s/ Noel L. Hillman
                                NOEL L. HILLMAN, U.S.D.J.


At Camden, New Jersey